IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **1ST CHOICE AUTO BROKERS, INC.,** : | |
| : | |
| **Plaintiff,** : | **Case No. 2:06-cv-816** |
| : | |
| v. : | **JUDGE ALGENON L.** |
| : | **MARBLEY** |
| : | |
| **CREDIT ACCEPTANCE CORPORATION,** : | |
| : | |
| : | |
| **Defendant.** : | |

## OPINION AND ORDER

### I. INTRODUCTION

This matter comes before the Court for consideration of Defendant's Motion to Dismiss the Complaint and to Compel Arbitration or, alternatively, for a stay in favor of arbitration. In its Motion, Defendant asks this Court to dismiss Plaintiff's claim pursuant to Fed. R. Civ. P. 12(B)(6) and 9 U.S.C. §§ 2-3 (Federal Arbitration Act). In the alternative, Defendant asks this Court permanently to stay all claims in favor of arbitration. For the reasons set forth herein, the Court **GRANTS** Defendant's Motion to Dismiss the Complaint and to Compel Arbitration.

### II. BACKGROUND

#### A. Facts

1st Choice Auto Brokers, Inc. ("Plaintiff") is an Ohio corporation formerly in the business of selling used automobiles. Credit Acceptance Corporation ("Defendant") is a Michigan corporation that finances automobiles sold by Plaintiff. Defendant alleges that, in June 1999, it entered into a Servicing Agreement (the "Agreement") with Plaintiff. The Agreement

was executed in Columbus, Ohio. Pursuant to the terms of the Agreement, Plaintiff submitted retail installment sales contracts that it had made with its customers to Defendant, and Defendant serviced loans with, and collected payments from, those customers. As compensation, Defendant would retain a service fee in the amount of twenty percent of its collections from the customers. Agreement, Art. III, 3.02. The Agreement further required Defendant to pay discretionary advances to Plaintiff, and after retaining its service fee, collection costs, and payments towards any outstanding advances, Defendant would then pay the remaining collections to Plaintiff. Agreement, Art. III.

In addition, the Agreement contained the following arbitration provision:

Any disputes and differences arising between the parties in connection with or relating to this Agreement or the parties relationship with respect hereto shall be settled and finally determined by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . . Notwithstanding the foregoing, Servicer shall be entitled to seek legal and equitable relief under this Agreement . . . in any court of record in the State of Michigan, County of Oakland, or in the United States District Court of the Eastern District of Michigan, and Dealer consents to the jurisdiction thereof.

Agreement, Art. VI, 6.04.

Plaintiff alleges that Defendant ceased remitting to Plaintiff the advances owed pursuant to the Agreement on or about June 1, 2001. Consequently, Plaintiff seeks damages of a sum in excess of $250,000.00.

### B. Procedural History

On May 29, 2006, Plaintiff filed its complaint (the "Complaint") against Defendant in the Franklin County Common Pleas Court. In the Complaint, Plaintiff seeks judgment of an equitable accounting for all sums due and owing to Plaintiff, judgment for all sums found to be

owing, interest, legal fees and costs, as well as such other relief to which Plaintiff may be entitled.

Defendant timely removed this action on September 27, 2006. On October 2, 2006, Defendant filed a Motion to Dismiss the Complaint and to Compel Arbitration. Plaintiff then filed a Response in Opposition to Defendant's Motion to Dismiss the Complaint and to Compel Arbitration on October 12, 2006; on October 23, 2006, Defendant replied. Accordingly, Defendant's Motion is now ripe for this Court's review.

### III. STANDARD OF REVIEW

The Federal Arbitration Act, 9 U.S.C. § 3, provides in pertinent part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

Notwithstanding the plain language of the statute, however, the Sixth Circuit has interpreted section 3 as permitting dismissal of cases in which all claims are referred to arbitration. *See Hensel v. Cargill, Inc.*, 1999 WL 993775, at *4 (6th Cir.1999); *see also Alford v. Dean Witter Reynold Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that dismissal is proper where all claims must be submitted to arbitration); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (holding that 9 U.S.C. § 3 does not preclude dismissal).

Moreover, the claim will be precluded from arbitration only in the presence of an express provision excluding a specific dispute, or "the most forceful evidence of a purpose to exclude the claim from arbitration." *Masco Corp. v. Zurich American Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (citations omitted). Last, this Court views matters such as this in light of this Circuit's

strong presumption in favor of arbitration for all related claims encompassed by an arbitration clause. *See Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 578 (6th Cir. 2003) ("[i]t is well established that any doubts regarding arbitrability *must be resolved in favor of arbitration*." (emphasis added)).

## IV. ANALYSIS

In its response to Defendant's Motion to Dismiss or Stay, Plaintiff contends that the Agreement is not a binding contract. Plaintiff sets forth various arguments as to the validity of the Agreement, but in its memorandum provides little support for its arguments. To reach its decision whether to dismiss the claim, however, the Court must nevertheless determine whether all claims are referable to arbitration.

When determining whether claims are referable to arbitration, the Court uses a two-prong test. Relying on the Sixth Circuit's holding in *Masco Corp.*, this Court must determine: (1) Whether a valid agreement exists; and (2) whether the dispute falls within the scope of the agreement. 382 F.3d at 627. In making this determination, this Court neither overrides the clear intent of the parties, nor reaches a result inconsistent with the plain language of the agreement. *See id.*

### A. The Existence of a Valid Agreement

The Supreme Court has held that "[s]tates may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause upon such grounds as exist at law or in equity for the revocation of any contract." *Doctor's Associates, Inc. v. Casarotto*, 571 U.S. 681, 686 (1996). Federal courts apply state law in determining the validity, revocability, and enforceability of contracts. *See Great Earth Cos. v.*

*Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

### 1. Choice of Law

A federal court sitting in a diversity action must apply the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941); *Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122 (6th Cir. 1987). In *Nationwide Mutual Insurance Co. v. Ferrin*, 487 N.E.2d 568, 569 (Ohio 1986), the Ohio Superior Court held, "it is well-settled in Ohio that in cases involving a contract, the law of the state where the contract is made governs the interpretation of the contract." However,

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or application of the law of the state would be contrary to the fundamental policy of a state having a greater material interest in the issue than the chosen state and such state would be the state of the applicable law in the absence of a choice by the parties.

*Sculke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 453 N.E.2d 683, 686 (Ohio 1983). *See Sekeres v. Arbaugh*, 508 N.E.2d 941, 942 - 943 (Ohio,1987).

Just as in *Schulke*, the parties here negotiated that the Agreement would be governed by the law of Michigan. Thus, this Court will apply the law of Michigan if the requirements outlined in *Schulke* are met.

The first requirement is that the chosen state must have a substantial relationship to the parties of the transaction, or that there be some reasonable basis for the parties' choice. It is undisputed that Michigan is Defendant's state of incorporation. Moreover, Plaintiff and Defendant have maintained a business relationship for nearly two years. Thus, a reasonable basis exists for the choice of the parties.

The second requirement is that the application of the law of the chosen state must not violate the fundamental policy of the state which (1) has a greater material interest in the determination of the issue, and (2) is the state whose law would be applied in the absence of a choice by the parties. In other words, the application of Michigan law here must not violate the public policy of Ohio, but this is to be determined only if Ohio has a materially greater interest than Michigan in this matter, and only if Ohio law would have governed the agreement if the parties had not specified otherwise. Ohio law clearly would have applied here had the parties not specified Michigan law in the Agreement. Ohio, however, does not have a materially greater interest than Michigan in the outcome of the case. While it is true that the Agreement was signed in Ohio and that Plaintiff is an Ohio corporation, Ohio was not the sole place of performance of the Agreement. Moreover, Defendant remitted payment from its Michigan offices, and likewise, much of the financing at issue took place in Michigan. Therefore, Ohio does not have a materially greater interest than Michigan in this matter.

Consequently, it is unnecessary under the *Schulbe* tests to determine whether the application of Michigan law would violate Ohio's public policy. As the Ohio Supreme Court held in *Jarvis v. Ashland Oil, Inc.*, 478 N.E.2d 786 (Ohio 1985), even if the law of the chosen state "is concededly repugnant to and in violation of the public policy of [Ohio], the law of Ohio will only be applied when it can be shown that this state has a materially greater interest than the chosen state in the determination of a particular issue."

### 2. Plaintiff's Arguments

Plaintiff sets forth three theories as to why the Agreement is not a binding contract: First,

Defendant's failure to sign the Agreement; second, the absence of a date on the first page of the Agreement; third, the provision of the Agreement concerning the arbitration forum is a contract of adhesion. Therefore, the Court will address each of these theories in turn, and in doing so, apply Michigan law.

First, under Michigan law, when fewer than all of the parties to a contract sign the contract, the intention of the parties governs:

> In cases where a writing which purports to evidence a contract between several named persons has been signed by less than all those named, it is often found that the signers did not intend to become contractually bound until all the apparent parties sign and deliver the writing. This is not, however, immutable doctrine . . . . [T]hose who do sign the writing may have intended to be bound by its terms even though less than all the named persons sign. Their intention governs. The intention of the parties is a fact to be decided upon the evidence, not by invoking our personal, professional, or judicial experience.

*McLaughlin v. Innovative Logistics Group, Inc.*, WL 2346418 at *2 (E.D. Mich 2005); *See Weigand v. Tringali*, 177 N.W.2d 435 (Mich. Ct. App. 1970). It is undisputed that Plaintiff signed the Agreement. Having signed the agreement, and having subsequently performed relying on the Agreement, Plaintiff clearly intended to be bound by the terms of the Agreement. Defendant's failure to sign the Agreement does not negate this intention. Thus, Defendant may enforce the Agreement against Plaintiff–even in the absence of Defendant's signature. Because Plaintiff has failed to persuade the Court otherwise, this theory of unenforceability lacks merit.

Second, Plaintiff's argument that the absence of a date on the first page of the Agreement renders it unenforceable is entirely without legal basis. Plaintiff merely states this argument, providing neither explanation nor authority. Moreover, as Defendant notes, even if Plaintiff

provided legal support for this theory, the argument would be moot because the Agreement is dated *twice* on page six. Plaintiff again has failed to demonstrate to the Court its basis for its argument, and therefore, this theory too fails.

Third, Plaintiff argues that the forum provision of the arbitration clause is unenforceable because it is a contract of adhesion. The Michigan Supreme Court defines an adhesion contract as:

> . . . [a] contract entered into between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a 'take it or leave it basis' carries some consequences that extend beyond orthodox implications. Obligations arising from such a contract inure not alone from the consensual transaction but from the relationship of the parties.

*Rory v. Continental, Ins. Co.*, 703 N.W.2d 23, 37 (Mich. 2005). Here, there is evidence of neither unequal bargaining power nor standardized contract language. Furthermore, there no evidence of a "take it or leave it"- type offer.

As explained in *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000), the party resisting arbitration bears the burden of proving that its claim is unsuitable for arbitration. Summarily concluding that the forum provision is an adhesion contract, and therefore unconscionable, does not enable Plaintiff to meet its burden. In its memorandum, Plaintiff merely mentions this argument, cites no case law, and, most detrimental to its position, addresses no facts relevant as to why the forum provision constitutes an unconscionable adhesion contract. Based on Plaintiff's complaint and subsequent memorandum, this Court finds that Plaintiff has failed to meet its burden of demonstrating that its claim is unsuitable for arbitration.

Therefore, because Plaintiff has failed to persuade the Court otherwise, the Court finds

that Plaintiffs and Defendant entered into the Agreement of their own volition. Moreover, this Court finds a meeting of the minds as to the terms of the Agreement. Thus, this Court finds that there is a valid agreement to arbitrate this dispute.

### B. Dispute Within the Scope of the Agreement

To determine whether the parties agreed to arbitrate a particular dispute, the Court focuses on Plaintiff's factual allegations in light of the terms of the agreement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985). In *Mitsubishi Motors*, the parties entered into a distributor agreement containing the following arbitration provision:

> All disputes, controversies or differences which may arise . . . out of or in relation to . . . this Agreement or for the breach thereof, shall be finally settled by arbitration . . . .

*Id.* at 617. Affirming the lower court's finding that provision was controlling, the Supreme Court focused mainly on generally alleged facts, rather than narrowly construing the provision as allowing for only those causes of action mentioned explicitly in the provision. *Id.* at 622 n.9. Construing the agreement broadly, the Court held that so long as the dispute is within the general scope of the agreement, the dispute is therefore subject to arbitration. *Id.*

Here, the controlling language of the Agreement makes it abundantly clear that the dispute in the instant case falls within the scope of the Agreement: "Any disputes and differences arising between the parties in connection with or relating to this Agreement . . . ." Agreement, Art. VI, 6.04. The dispute alleged by Plaintiff–that Defendant ceased to remit advances–is governed by Article III of the Agreement. Thus, viewing these allegations in light of the terms of the Agreement, this Court finds that the dispute falls *squarely* within the scope of the Agreement.

Therefore, having satisfied both prongs of the *Masco Corp.* test, this Court finds that all claims in the present action are referable to arbitration.

### C. Dismissal of the Case

The last question before the Court is whether to dismiss or stay the case. In *Alford*, 975 F.2d at 1164, the Fifth Circuit reasoned,

> Although we understand the plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration. Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to judicial review of the arbitrator's award in the limited manner prescribed by law.

Here, just as in *Alford*, all issues are arbitrable. Moreover, retaining jurisdiction over this action and staying the action will serve no meaningful purpose. Therefore, because all of Plaintiff's claims are subject to arbitration, this Court dismisses this case compels arbitration.

### V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Complaint and to Compel Arbitration is **GRANTED**.

**IT IS SO ORDERED.**

_[signature]_
**ALGENON L. MARBLEY**

**UNITED STATES DISTRICT JUDGE**

**DATED: July 17, 2007**